IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

HENRY TECHNOLOGIES HOLDINGS, LLC,

                          Plaintiff,                          OPINION & ORDER

       v.
                                                              14-cv-63-jdp

MICHAEL GIORDANO,

                          Defendant.

---

This case is a dispute about a dispute. At the bottom: the defendant in this case, Michael Giordano, contends that he is due a bonus from his former employer, Henry Technologies, Inc. (Henry Technologies), which is not a party here. Henry Technologies apparently does not have the money, so Giordano has turned to the parent company, Henry Technologies Holdings, LLC (Henry Holdings). But Giordano does not want to sue; he wants to arbitrate, as provided in his contract with Henry Technologies. This brings us to the matter before this court: Henry Holdings, plaintiff here, filed this lawsuit seeking a declaration that it is not bound to arbitrate with Giordano.

Giordano has not yet answered the complaint, nor has he asserted a counterclaim for the amounts he thinks are due. He has instead moved to stay this action and compel arbitration. Dkt. 6. Relying on the Federal Arbitration Act, 9 U.S.C. §§ 1-16, Giordano seeks to compel arbitration and asks the court to conclude that even though the parent company, Henry Holdings, did not sign the employment agreement, it is nevertheless bound by the arbitration clause signed by its subsidiary, Henry Technologies. Based on the parties' submissions on Giordano's motion, it appears unlikely that Henry Holdings is bound by the arbitration agreement. There is, however, a genuine dispute of material fact on the issue, and thus the court

is prepared to revisit the question of arbitration on a more complete record. For now, the court will deny Giordano's motion.

ALLEGATIONS OF FACT

The court treats the parties' submissions on a motion to compel arbitration like a motion for summary judgment. *See Tickanen v. Harris & Harris, Ltd.*, 461 F. Supp. 2d 863, 866 (E.D. Wis. 2006) (citing *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n.9 (3d Cir. 1980)). Thus, the court draws the following facts from the complaint and the parties' affidavits in support of and in opposition to Giordano's motion.

Henry Holdings is a Wisconsin limited liability company whose only member is Hendricks Holding Company, Inc., a Wisconsin corporation with its principal place of business in Beloit, Wisconsin. Henry Holdings's subsidiaries manufacture and market products for the refrigeration and air conditioning industries. Giordano is a citizen of New Jersey. This court has diversity jurisdiction because the parties are completely diverse and the amount in controversy exceeds $75,000. *See Am.'s MoneyLine, Inc. v. Coleman*, 360 F.3d 782, 787 (7th Cir. 2004) ("[T]he stakes of the arbitration are the ultimate amount in controversy.").

In 2008, Henry Technologies hired Giordano to serve as its president and CEO. Giordano entered into an employment agreement, Dkt. 23-2, which both he and a representative of Henry Technologies signed. The agreement established a "phantom equity incentive" that would provide Giordano with a bonus, calculated as a percentage of any increase in equity value that Henry Technologies experienced during his leadership. The agreement also included several restrictive covenants, a non-assignment clause, and an arbitration clause that directed "any controversy or claim arising out of or relating to this contract, or the breach

2

thereof, [to] be settled by arbitration administered by the American Arbitration Association under its National Rules for the Resolution of Employment Disputes." *Id.* at 10.

Although none of the members of Henry Technologies's corporate family are parties to this case—except Henry Holdings—a brief summary of the corporate structure is necessary to frame the underlying dispute. When Giordano joined Henry Technologies, the company had two wholly owned subsidiaries: Henry Technologies Limited, a Canadian company; and Henry Technologies Limited, a company incorporated under the laws of the United Kingdom. In addition to serving as Henry Technologies's president and CEO, Giordano became the president of the Canadian company and a director of the United Kingdom company. Henry Technologies itself was a wholly owned subsidiary of Hendricks Holding Company, whose sole shareholder was Diane Hendricks. Ms. Hendricks was also the sole member of Henry Technologies's board of directors and, for all practical purposes, she was Giordano's direct supervisor throughout his employment.

In 2009, Henry Holdings was created as a new wholly owned subsidiary of Hendricks Holding Company as part of a corporate reorganization. Henry Holdings acquired Henry Technologies's stock and thus acquired control of Henry Technologies's subsidiaries. Ms. Hendricks was the only member of Henry Holdings's governing Board of Managers. When Henry Holdings was created, Giordano became its president and CEO, although he did not sign a new employment agreement or alter his existing contract with Henry Technologies. Giordano's duties with respect to Henry Technologies and the subsidiaries remained unchanged after Henry Holdings's creation, and he continued to report to Ms. Hendricks. The one significant change was that Henry Holdings began paying Giordano's salary and annual bonuses instead of Henry Technologies, although the parties dispute whether Giordano or one of the companies' boards made the decision to change the source of his salary. Henry Holdings shared the same offices as

Henry Technologies and had an almost identical group of employees. During the three years after its creation, Henry Holdings acquired two additional subsidiaries: Heldon Products Australia Pty., Ltd.; and Shell & Tube, LLC. Giordano was responsible for the operation, administration, and financial affairs of these companies, too.

On May 30, 2013, Hendricks Holding Company delivered a letter to Giordano terminating his employment with Henry Technologies. The letter was signed by Hendricks Holding Company's president, Jeff Stentz, and it informed Giordano that although he was technically eligible for a phantom equity bonus, the companies had performed poorly and he would not receive any payment. On January 14, 2014, Giordano filed a demand for arbitration with the American Arbitration Association. His demand named Henry Holdings as the only respondent.

The parties vehemently dispute whether Henry Holdings and its subsidiaries were successful under Giordano's leadership. That question is likely relevant to the underlying dispute that Giordano now seeks to arbitrate because the financial positions of the companies will determine the amount of his phantom equity bonus. But the question is not relevant to the matter before the court, which is whether Giordano can compel Henry Holdings to arbitrate.

Two weeks after Giordano filed his demand for arbitration, Henry Holdings filed this suit seeking a declaratory judgment that it is not bound by the arbitration agreement that Giordano entered into with Henry Technologies. Giordano countered with a motion to stay this case and compel arbitration.


OPINION

Giordano moves to compel arbitration under sections 3 and 4 of the Federal Arbitration Act. Dkt. 6. The FAA does not define a standard for a district court's determination of a motion

to compel arbitration, but other courts have held that such motions "are reviewed under a summary judgment standard." *Tickanen*, 461 F. Supp. 2d at 866 (citing *Par–Knit Mills, Inc.*, 636 F.2d at 54 n.9); *see also Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). Because Giordano is moving to compel arbitration, he bears the burden of demonstrating that the employment agreement requires Henry Holdings to arbitrate. *Fox v. Nationwide Credit, Inc.*, No. 09-cv-7111, 2010 WL 3420172, at *2 (N.D. Ill. Aug. 25, 2010); *Vazquez v. Cent. States Joint Bd.*, 547 F. Supp. 2d 833, 868 (N.D. Ill. 2008). If he fails to present sufficient evidence to support such a conclusion, or if Henry Holdings creates a genuine dispute of material fact on the issue of arbitrability, the court must deny the motion to compel.

Under the FAA, a court will compel arbitration if three conditions are present: (1) a written agreement to arbitrate; (2) a dispute within the scope of the arbitration agreement; and (3) a refusal to arbitrate. 9 U.S.C. § 4; *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). There is a strong federal policy favoring arbitration and "once it is clear the parties have a contract that provides for arbitration of some issues between them, any doubts concerning the scope of the arbitration clause are resolved in favor of arbitration." *Miller v. Flume*, 139 F.3d 1130, 1136 (7th Cir. 1998). In this case, however, the parties do not dispute the scope of the arbitration clause or Henry Holdings's refusal to arbitrate. Instead, their disagreement concerns whether Henry Holdings—a non-signatory—can be compelled to arbitrate an alleged breach of Giordano's employment agreement. "[W]hen, as in this instance, it is undisputed that there is a valid arbitration agreement and the issue is whether that agreement applies to a non-signatory . . . courts look to federal precedent applying the FAA to determine arbitrability." *S. Ill. Beverage, Inc. v. Hansen Beverage Co.*, No. 07-cv-391, 2007 WL 3046273, at *10 (S.D. Ill. Oct. 15, 2007) (internal citations omitted).

The court begins with the central premise that "arbitration is contractual by nature—'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Zurich Am. Ins. Co.*, 417 F.3d at 687 (internal citations omitted). The parties agree that Henry Holdings did not sign the employment agreement. The Seventh Circuit, however, has recognized "five doctrines through which a non-signatory can be bound by arbitration agreements entered into by others: (1) assumption; (2) agency; (3) estoppel; (4) veil piercing; and (5) incorporation by reference." *Id.* Giordano contends that the estoppel, veil piercing, and assumption doctrines apply in this case and that any one of them is sufficient to require Henry Holdings to arbitrate the dispute. Dkt. 8, at 19. The court concludes that the record, as it stands, is insufficient to establish any of Giordano's proposed theories.

**A.  The record does not support a theory of direct benefits estoppel.**

Giordano first asserts that the court should estop Henry Holdings from using the fact that it did not enter the employment agreement as grounds for refusing to arbitrate the parties' dispute.

Under the theory of direct benefits estoppel, "[a] nonsignatory party is estopped from avoiding arbitration if it knowingly seeks the benefits of the contract containing the arbitration clause." *Zurich Am. Ins. Co.*, 417 F.3d at 688; *see also E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 200 (3d Cir. 2001) ("[A] party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him.") (internal citations omitted). To establish direct benefits estoppel, it is not enough to show merely that a non-signatory is closely affiliated with a signatory or is within the same corporate family. *Everett v.*

6

*Paul Davis Restoration, Inc.*, No. 10-cv-634, 2012 WL 4128016, at *7 (E.D. Wis. Sept. 18, 2012), *reconsideration denied,* No. 10-cv-634, 2012 WL 6184993 (E.D. Wis. Dec. 11, 2012) (citing *MAG Portfolio Consultant, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 62 (2d Cir. 2001)).

Instead of mere affiliation, which might well produce *indirect* benefits to a non-signatory, there must be "a *direct* benefit under *the contract containing an arbitration clause* before a reluctant party can be forced into arbitration." *Zurich Am. Ins. Co.*, 417 F.3d at 688 (original emphasis) (internal citations omitted). If a "benefit is too attenuated and indirect[, the signatory cannot] force arbitration under an estoppel theory." *Id.* Relying on *Zurich*, other courts have held that "[t]he touchstone of this form of estoppel . . . is whether the non-signatory has brought suit against the signatory premised upon the agreement that contains the arbitration clause at issue, thus seeking the agreement's direct benefits." *Gersten v. Intrinsic Techs., LLP*, 442 F. Supp. 2d 573, 579 (N.D. Ill. 2006).

Henry Holdings has not brought any action under the employment agreement. Giordano nevertheless identifies two benefits which he asserts give rise to estoppel. First, Giordano argues that the employment agreement "permitted Henry Technologies's . . . Board of Members/Board of Directors to install Mr. Giordano as [Henry Holdings's] President and CEO as part of his duties." Dkt. 8, at 21. Because Giordano actually undertook those roles, he maintains that Henry Holdings directly benefitted from a provision of his employment agreement. Second, Giordano argues that he was bound by the restrictive covenants in his employment agreement which prevented him from competing with, soliciting or contacting the customers of, or inducing employees to leave "any . . . company which Mr. Giordano serves as an officer and which is under common control with Henry Technologies and their respective or direct subsidiaries." *Id.* at 22. Giordano suggests that he would not have had these obligations to Henry Holdings but

for the employment agreement with Henry Technologies, and states that he has so far complied with these restrictive covenants.

The "benefits" Giordano identifies, however, are not of the kind that typically binds a non-signatory through a theory of direct benefits estoppel; they are too indirect. "[T]he benefit derived from an agreement is indirect where the nonsignatory exploits the contractual relation of parties to an agreement, but does not exploit (and thereby assume) the agreement itself." *Everett*, 2012 WL 4128016, at *7 (citing *Thomson–CSF v. Am. Arbitration Ass'n*, 64 F.3d 773 (2d Cir. 1995)). With respect to Giordano's appointment to positions within Henry Holdings, any benefit the company received was indirect because it merely exploited the contractual relationship Giordano had with Henry Technologies. When Ms. Hendricks appointed Giordano to his position with Henry Holdings, she was able to do so because of her position as Henry Technologies's director and because Giordano's employment agreement with Henry Technologies authorized him to work for certain other companies. Giordano's observation that Ms. Hendricks controlled both Henry Technologies and Henry Holdings is not relevant absent some evidence that she was acting in the latter capacity when she asked Giordano to take on the additional responsibilities. But Giordano's submissions to the court all but concede that this was not the case. *See* Dkt. 20, at 13 ("Mr. Giordano was appointed to the position by Diane Hendricks. She controlled Henry Technologies. She requested that he serve as the President and CEO of Henry [Holdings]. Under the terms of the Agreement, Mr. Giordano had no choice whether or not to accept that responsibility.").

The same is true for the restrictive covenants Giordano identifies. Those conditions were creatures of his employment agreement *with Henry Technologies*, and Henry Holdings has not sued to enforce them or taken an active role in securing Giordano's continued compliance with

8

them. Again, any benefit that Henry Holdings has received from the restrictive covenants is indirect and not due to the company's own, direct efforts.

The court's conclusion that these benefits are indirect is buttressed by other cases where courts have found the theory of direct benefits estoppel to be inapplicable. In *Zurich*, for example, the Seventh Circuit held that a subsidiary did not receive a direct benefit from a contract its parent company signed. 417 F.3d at 688. The parent company signed a deductible agreement with an insurance company, and then both the parent and the subsidiary signed separate insurance contracts with the insurance company. *Id.* at 684-86. The court concluded that even if the subsidiary benefitted from the deductible agreement by being able to secure lower premiums in its own insurance agreement, the benefit was too indirect to give rise to estoppel. *Id.* at 688. In *Thomson-CSF, S.A.*, direct benefit estoppel did not apply when two companies were contractually bound to trade only with each other and a third-party competitor acquired one of the companies with the intent of squeezing the remaining company out of the market. 64 F.3d at 778-80. Although the trade agreement was crucial to the benefit that the competitor gained, the agreement was not the direct source of the benefit. Rather, the benefit flowed from the competitor's exploitation of the contractual relation created by the agreement. Just as in these cases, Giordano lacks evidence that Henry Holdings took some affirmative step to enforce or apply the employment agreement.

Even if *Zurich* did not control, Giordano's situation is distinguishable from cases where direct benefits estoppel was appropriate. For example, in *Hughes Masonry Company, Inc. v. Greater Clark County School Building Corporation*, the Seventh Circuit applied the doctrine to prevent a signatory to an arbitration agreement from avoiding arbitration with a non-signatory. 659 F.2d 836, 837-38 (7th Cir. 1981). The *Hughes* court held that it would have been fundamentally unfair to allow the signatory—the plaintiff in that case—to avoid arbitration when its claims

against the non-signatory were grounded in the contract that contained the arbitration provision. *Id.* at 838-39. Here, in contrast, Henry Holdings does not bring claims arising under the agreement; it seeks a declaration that it is not bound by the contract. Henry Holdings may have benefitted from having Giordano serve as its president and CEO, but not by any affirmative action or usurpation of authority that the company itself took. The theory of direct benefits estoppel is therefore not applicable in this case and Giordano cannot use the doctrine to force Henry Holdings to arbitrate the employment agreement.

**B.  The record does not support a theory of veil piercing or alter ego.**

Giordano next asserts that the court should hold Henry Holdings to the arbitration clause because Henry Technologies was merely the alter ego of Henry Holdings, thus warranting piercing the corporate veil. "Piercing the corporate veil is not favored and in general, courts are reluctant to do so." *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 379 (7th Cir. 2008). To analyze whether piercing would be appropriate, a federal court uses the choice of law rules for the state in which it sits. *Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751 (7th Cir. 2012). "The general rule is that a plaintiff's alter ego theory is governed by the law of the state in which the business at issue is organized . . . . Courts applying Wisconsin choice of law rules in recent years have followed this rule." *Rual Trade Ltd. v. Viva Trade LLC*, 549 F. Supp. 2d 1067, 1077-78 (E.D. Wis. 2008) (internal citations omitted). Here, the court will look to Illinois law because Giordano seeks to pierce through Henry Technologies, an Illinois corporation. Dkt. 23, ¶ 4.

Under Illinois law, the court can pierce a corporate veil and hold a non-signatory to an arbitration agreement when: "(1) 'there [is] such unity of interest and ownership that the separate personalities of the corporation and the individual' no longer exist; and (2)

10

'circumstances [are] such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice.'" *Wachovia Sec., LLC*, 674 F.3d at 751-52 (internal citations omitted). The analysis is necessarily "fact-intensive." *Laborers' Pension Fund v. Lay-Com, Inc.*, 580 F.3d 602, 610 (7th Cir. 2009).

Giordano has not identified undisputed facts sufficient to support his alter ego theory. At this point in the case, Giordano relies on three agreed-upon facts: (1) Henry Technologies and Henry Holdings shared offices; (2) Henry Technologies and Henry Holdings shared corporate officers; and (3) Henry Holdings did not pay to acquire the stock of Henry Technologies and its subsidiaries. *Compare* Dkt. 7 *with* Dkt. 11-2, Dkt. 11-3, and Dkt. 11-4. But even in combination, these three facts are insufficient to establish that Henry Technologies is merely the alter ego of Henry Holdings.

As to the first two facts, sharing offices and officers does not create the "unity of interest and ownership" required for piercing. *See Joiner v. Ryder Sys. Inc.*, 966 F. Supp. 1478, 1484-85 (C.D. Ill. 1996) ("[T]he fact that [a parent holding company]—instead of the subsidiaries' directors—elects the officers of the [group of sister subsidiaries] is atypical of wholly-independent companies. But, that fact alone—without more—is insufficient to pierce the corporate veil."); *Bright v. Roadway Servs., Inc.*, 846 F. Supp. 693, 700 (N.D. Ill. 1994) ("[W]ithout more, 'the separate corporate entities of two corporations may not be disregarded merely because one owns the stock of another or because the two share common directors or occupy the same office space.'") (internal citations omitted); *Hornsby v. Hornsby's Stores, Inc.*, 734 F. Supp. 302, 308 (N.D. Ill. 1990) ("The fact that the three corporations share directors, office space and office staff do[es] not suggest that [one corporation] was a mere instrumentality of the other corporations, nor does it indicate some fraud or injustice."). Henry Technologies and Henry Holdings have a close corporate connection, but a simple "parent-subsidiary relationship

11

'does not create the relation of principal and agent or alter ego between the two' [and a] corporate relationship is generally not enough to bind a nonsignatory to an arbitration agreement." *Zurich Am. Ins. Co.*, 417 F.3d at 688 (internal citations omitted).

Giordano appears to rely most heavily on allegations related to the third fact—that through a corporate reorganization, Henry Holdings simply assumed ownership of Henry Technologies and its subsidiaries. Giordano also contends that the subsidiaries were later spun off from Henry Technologies and that Henry Technologies did not receive appropriate consideration in return. Dkt. 8, at 25. But none of these facts is sufficient to establish Giordano's alter ego theory. There is nothing improper in Hendricks Holding Company dropping down a subsidiary corporation to hold its interest in Henry Technologies, which was already a wholly owned subsidiary. And, given that the Canadian and United Kingdom subsidiaries were also wholly owned, there would be nothing inherently improper in spinning off these two subsidiaries into separate companies to be owned directly by Henry Holdings, which already owned them indirectly. Giordano needs more than this.

To establish the alter ego theory under Illinois law, Giordano has to adduce evidence that these corporate maneuvers were undertaken improperly or for some improper purpose. Such evidence would include the following well-known indicia: inadequate capitalization; failing to issue stock; failing to observe corporate formalities; failing to pay dividends; corporate insolvency; nonfunctioning corporate officers; missing corporate records; commingling funds; diverting assets to an owner or other entity to a creditor's detriment; failing to maintain arm's length relationships among related entities; and using the corporation as a mere façade for a dominant owner. *Wachovia Sec., LLC*, 674 F.3d at 752. Giordano offers only vague assertions that Henry Holdings and Henry Technologies somehow commingled funds, but those

12

unsupported and threadbare allegations are not enough to warrant disregard of the corporate form.

Giordano's showing on his alter ego theory falls short. Nevertheless, we are early in the case, and the parties have not conducted discovery. Giordano's prospects on the alter ego theory are not at all promising, but the court will allow Giordano to renew his motion to compel on this ground if, after discovery, he can adduce evidence to support it.

## C.  The record does not support a theory of assumption.

Giordano's final argument for holding Henry Holdings to the arbitration clause is that the company's conduct indicates that it has assumed the obligation to arbitrate. Giordano relies exclusively on *Hospira, Inc. v. Therabel Pharma N.V.*, in arguing that "[a] non-signatory 'may be bound by an arbitration clause if its subsequent conduct indicates that *it is assuming the obligation to arbitrate*.'" No. 12-cv-8544, 2013 WL 3811488, at *12 (N.D. Ill. July 19, 2013) (original emphasis) (quoting *Invista S.A.R.L. v. Rhodia, S.A.,* 625 F.3d 75, 85 (3d Cir. 2010)). Specifically, Giordano argues that Henry Holdings "assumed the obligation to arbitrate by performing the duties and obligations of Henry Technologies as set forth under the" employment agreement. Dkt. 8, at 26. He observes that Henry Holdings paid his salary, benefits, expenses, and annual performance bonuses, and contends that these payments manifested an assumption of the employment agreement, including the arbitration provision. Giordano misreads *Hospira* and misapplies the doctrine of assumption.

In *Hospira*, the court concluded that assumption did *not* apply when a parent company had assumed a licensing agreement but had not manifested its intent to be bound by an arbitration clause in that agreement. 2013 WL 3811488, at *12. The court found dispositive the fact that the parent company had actually taken affirmative steps to "distance itself from the

13

[a]rbitration [c]lause" by seeking a declaratory judgment that it was not bound by the provision. *Id.* at *12-13. The court suggested that the outcome might have changed had the subsidiary ceased to exist, but concluded that the subsidiary-signatory "maintained its separate legal identity," and so using assumption against the parent was not appropriate. *Id.* at *12 (citing *Fyrnetics (Hong Kong) Ltd. v. Quantum Grp., Inc.*, 293 F.3d 1023, 1029 (7th Cir. 2002)). *Hospira* bears a remarkable resemblance to the present case. Even if Henry Holdings assumed aspects of the employment agreement, such as compensation, the record lacks any evidence that Henry Holdings also assumed Henry Technologies's obligation to arbitrate. Quite the opposite: like the parent company in *Hospira*, Henry Holdings has asked the court for a declaratory judgment that it is *not* bound by the arbitration clause.

In response to this argument, Giordano asserts that Henry Holdings "interfered with Mr. Giordano's contract with Henry Technologies, through divestiture of the subsidiaries and other assets." Dkt. 20, at 22. Giordano contends, therefore, that if Henry Holdings "is not compelled to arbitrate, there will be parallel litigations proceeding in two different forums arising from the same set of facts:" an action against Henry Holdings for interference with contract; and an arbitration against Henry Technologies for the underlying dispute. *Id.* Giordano does not cite any legal authority in support of this response. Nor does he adequately explain how his point— even if true—would bear on Henry Holdings's assumption of the obligation to arbitrate. The court concludes that the very authority Giordano cites forecloses his position and that the record does not support applying the doctrine of assumption because Henry Holdings has not manifested any intent to be bound by the arbitration clause.

14

CONCLUSION

The court will deny Giordano's motion to compel arbitration because he has not established any of the theories he proposes for binding Henry Holdings to the arbitration clause agreed to by Henry Technologies. Without any such viable theory, the court cannot compel Henry Holdings to arbitrate when it did not agree to do so.

But the court will allow Giordano to renew his motion, if discovery yields support for it. Following the guidance in *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013), the court will require that any such renewed motion be presented as a motion for summary judgment, following this court's established summary judgment procedures. *See* Dkt. 25. If genuine disputes of material fact prevent the court from deciding the matter on the motion, the court will hold an evidentiary hearing to resolve the matter conclusively.

A word about timing. The summary judgment deadline in this case is January 23, 2015. But the arbitration issue should be resolved more promptly than that. The court will not set a deadline for a renewed motion to compel arbitration, but Giordano should make such a motion as soon as practical, and he should conduct any discovery he needs on that issue without delay. Henry Holdings may also move for summary judgment that it is *not* bound to arbitrate as soon as Giordano has been afforded a reasonable opportunity for discovery on that issue.

The scheduling order in this case provides that each party may file only one motion for summary judgment without leave of the court. Dkt. 25, at 2. But in the event that Giordano renews his motion to compel arbitration, or Henry Holdings moves for summary judgment on its claim for declaratory relief, the court will allow the parties to file later motions for summary judgment on the substantive issues in this case, should any arise.

ORDER

IT IS ORDERED that Defendant Michael Giordano's Motion to Stay this Action and Compel Arbitration, Dkt. 6, is DENIED.


Entered this 5th day of August, 2014.

BY THE COURT:
/s/
JAMES D. PETERSON
District Judge

16